## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **NORTHFIELD INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | **CIVIL ACTION FILE** |
| **v.** | ) ) | **No. 1:23-cv-03596-SEG** |
| **NORTH BROOK INDUSTRIES, INC. d/b/a UNITED INN AND SUITES; and J.G.,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## BRIEF IN OPPOSITION TO MOTION TO DISMISS

Plaintiff Northfield Insurance Company ("Northfield") files this brief in opposition to the motion to dismiss filed by Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("Northbrook") (Doc. 7). For the reasons provided the motion should be denied.

### I.     FACTS

#### A. The Underlying Allegations

Northfield seeks a declaration that the policy issued to Northbrook does not cover claims asserted in the lawsuit styled *J.G. v. Northbrook Industries, Inc. d/b/a Northbrook and Suites*, which is pending in this Court in case number 1:20-cv-05233-SEG ("the Underlying Lawsuit"). In the Underlying Lawsuit, J.G. alleges that she was trafficked for sex as a minor by individuals who "operated openly and

brazenly" at the Northbrook & Suites located at 4649 Memorial Drive, Decatur, Georgia, 30032 ("Northbrook"). (Doc. 1-1, pp.2, 5, 9). She alleges that Northbrook, which owned, operated, maintained, controlled, and managed the hotel, knew or should have known that she was being trafficked and failed to uphold its duty of care regarding the safety of the hotel and hotel guests. (Doc. 1-1, p. 5). She alleges that Northbrook knowingly benefitted from participation in a venture that violated the Trafficking Victims Protection Reauthorization Act (TVPRA). (Doc. 1-1, pp. 33-36). She also asserts that Northbrook was negligent in failing to keep the premises safe from sex trafficking and failed to implement policies and procedures to prevent, identify, and deter sex trafficking. (Doc. 1-1, pp. 36-111).

## B. **The Policy Terms**

Northfield issued policy number WS348486 to "Northbrook Industries DBA Northbrook Tahir Shareef" for the period July 13, 2018 to July 13, 2019. (Doc. 1-2, p.13). In pertinent part, the Commercial General Liability Coverage Form ("CGL Form") grants coverage for "bodily injury" and property damage" under Coverage A and "personal and advertising injury" under Coverage B. (Doc. 1-2, pp. 33 et seq.)

### 1. **Grants of Coverage for "Bodily Injury" and "Personal and Advertising Injury"**

Coverage A applies in pertinent part to "bodily injury" that occurs during the policy period and is caused by an "occurrence." (Doc. 1-2, p. 33). "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death

resulting from any of these at any time." (Doc. 1-2, p. 44). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-2, p. 46).

Coverage B applies to "personal and advertising injury" that is "caused by an offense arising out of [Northbrook's] business" committed during the policy period. (Doc. 1-2, p. 37). By endorsement entitled "Combination Endorsement Personal and Advertising Injury Liability," the term "personal and advertising injury" is defined in pertinent part as "injury caused by one or more of the following offenses committed by or on behalf of the insured: (1) False arrest, detention or imprisonment, provided that the claim is made or the "suit" is brought by a person who claims to have been falsely arrested, detained or imprisoned." (Doc. 1-3, p. 2).

### 2. Abuse or Molestation Exclusion

An endorsement entitled "**Exclusion – Abuse or Molestation**" modifies Coverages A and B to exclude coverage for claims "arising out of any act of 'abuse or molestation' committed by any person, including any act or omission in connection with the prevention or suppression of such 'abuse or molestation'." (Doc. 1-2, p. 53). "Abuse or molestation" is defined within the endorsement as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (Doc. 1-2, p. 53).

### 3.  Assault or Battery Endorsement

An endorsement entitled "Limited Assault or Battery Liability Coverage" ("Assault or Battery Endorsement") modifies Coverages A and B by excluding coverage for claims "arising out of any act of 'assault' or 'battery' committed by any person, including any act or omission in connection with the prevention or suppression of such 'assault' or 'battery'." (Doc. 1-3, p. 5). The endorsement then grants a sub-limited Assault or Battery Liability coverage subject to a $25,000 limit for "Each Assault or Battery Offense" and has a $50,000 "Aggregate Assault or Battery" limit. (*Id.*). This sublimit for the Assault or Battery Liability coverage applies in pertinent part to "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' or 'personal and advertising injury'" that is "caused by an 'assault or battery offense' arising out of [Northbrook's] business but only if the 'assault or battery offense' was committed … during the policy period." (Doc. 1-3, p. 6).

An "assault or battery offense" is defined within the Assault or Battery Endorsement as "a single act of 'assault' or 'battery', or multiple, continuous, sporadic or related acts of 'assault' or 'battery', committed by any person or by two or more persons acting together." (Doc. 1-3, p. 8). "Assault" is defined within the Assault or Battery Endorsement as "any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such

4

injury." (Doc. 1-3, p. 8). "Battery" is defined within the Assault or Battery Endorsement as "any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or ex333pected." (*Id.*)

The Assault or Battery Liability coverage is subject to the Directed Or Knowingly Allowed Acts exclusion, which bars coverage for claims of injury "committed at the direction of the insured of that the insured knowingly allowed to happen." (Doc. 1-3, p.6). The Assault or Battery Liability coverage is also subject to the Abuse Or Molestation Or Sexual Harassment exclusion, which bars coverage, in relevant part, for claims "arising out of 'abuse or molestation'." (Doc. 1-3, p. 6). The Assault or Battery Endorsement defines "abuse or molestation" as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (Doc. 1-3, p. 8).

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A. The Absence of Coverage is Justiciable

Northbrook begins by contending that "case or controversy" jurisdiction is absent as to indemnity obligations because liability has not been determined. (Doc. 7-1, pp. 5-6.) Northbrook is mistaken, particularly in the context of this case.

"Case or controversy" jurisdiction supports declaratory relief under 28 U.S.C. § 2201 where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 283 (1941). This is not a rigid test, as "the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists." *GTE Directories Publ'g Corp. v. Trimen Am.*, 67 F.3d 1563, 1569 (11th Cir. 1995) (citation omitted).

Specific to the insurance context, jurisdiction exists where the insured does not accept the insurer's denial, signaling that "the controversy has not disappeared." *Am. Ins. Co. v. Evercare Co.*, 699 F. Supp. 2d 1355, 1359 (N.D. Ga. 2010), *aff'd* 430 F. App'x. 795, 798-99 (11th Cir. 2011). As the Eleventh Circuit stated succinctly in its affirmance, "FFIC denied coverage and Evercare demanded it. That is a controversy and thus there is jurisdiction." 430 F. App'x. at 799. *See also Progressive Mountain Ins. Co. v. Chen*, No. 1:21-CV-00086-JPB, 2022 WL 596791, *3 (N.D. Ga. Feb. 28, 2022) ("requiring [the insurer] to wait until suit is filed to seek clarity about its rights and obligations under the Policy runs contrary to the purposes of the Declaratory Judgment Act.").

These cases stand for the firm principle that an insurer needs to show only that a live coverage dispute exists to be justiciable under 28 U.S.C. § 2201. The coverage dispute is especially live in this case as Northfield seeks a declaration that it does not owe coverage for the claims asserted in the Underlying Lawsuit, including a duty to defend as well as a duty to indemnify. Whereas a duty to indemnify standing alone depends on a determination of liability, a duty to defend exists "if the facts as alleged in the complaint even arguably bring the occurrence with the policy's coverage." *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 207, 498 S.E.2d 782 (1998). The duty to defend is thus broader than its duty to indemnify such that the absence of a duty to defend resolves the coverage question in its entirety. *Shafe v. Am. States Ins. Co.*, 288 Ga. App. 315, 317, 653 S.E.2d 870, 873 (2007) (citing *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. 557, 559, 481 S.E.2d 850 (1997)).

For the reasons explained below, Northfield has plausibly alleged that does not owe a defense which subsumes the narrower duty to indemnify. Accordingly, "case or controversy" jurisdiction exists to grant the declaratory relief requested.

## B. The Liability Claims are not Covered by the Policy

### 1. Standards of Review

A motion to dismiss must be denied if the complaint "states a plausible claim on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the coverage context, the question is whether the insurer has alleged facts to plausibly support a declaratory judgment as to the absence of coverage under the policy. See *Frontier Dev., LLC v. Endurance Am. Spec. Ins. Co.*, 2022 WL 1763402, *2 (11th Cir. June 1, 2022.)

Under the substantive law of Georgia, policy interpretation is a question of law to be resolved by the court. *Varsalona v. Auto-Owners Ins. Co.*, 281 Ga. App. 644, 645-46, 637 S.E.2d 64, 66 (2006). See also *Sewell v. Hull/Storey Dev., LLC*, 241 Ga. App. 365, 366-67, 526 S.E.2d 878, 880 (1999) ("A contract should be construed by the court where the language is undisputed, but the meaning of that language is in dispute[.]") Unambiguous policy provisions must be given effect "even if beneficial to the insurer and detrimental to the insured." *First Specialty Ins. Corp. v. Flowers*, 284 Ga. App. 543, 545, 644 S.E.2d 453, 455 (2007) (quoting *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 372, 599 S.E.2d 220, 221-222 (2004)). *See also Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287, 667 S.E.2d 90, 92 (2008) ("Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured."); *Fernandes v. Manguistics Atlanta*, 261 Ga. App. 429, 433, 582 S.E.2d 499, 503 (2003) (a court is

not "at liberty to rewrite or revise a contract under the guise of construing it.")
Finally, the insured has the burden of "proving that a claim falls within the coverage
of the policy." *Travelers Home & Marine Ins. Co. v. Castellanos*, 297 Ga. 174, 176,
773 S.E.2d 184, 186 (2015).

Applying these rules, Northfield has plausibly alleged that does not cover the
claims in the Underlying Lawsuit such that the motion to dismiss should be denied.

### 2.  Coverage A Plausibly Does Not Apply

Northbrook glosses over Coverage A and instead lumps it into its argument
that the liability claims are broader than the "abuse or molestation" exclusion in the
policy. Significantly, though, Coverage A applies to "bodily injury" that is defined
as "bodily injury, sickness or disease sustained by a person, including death resulting
from any of these at any time." (Doc. 1-2, p. 44). This definition "pertains to physical
injury to the body. It does not include non-physical, emotional or mental harm."
*Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 427, 591 S.E.2d 430,
435 (2003) (quoting *Presidential Hotel v. Canal Ins. Co.*, 188 Ga. App. 609, 611,
373 S.E.2d 671, 672 (1988)). Although J.G. alleges that she trafficked for sex she
does not claim to have been *physically* injured as required for there to be "bodily
injury" under the policy. As such, Northfield has plausibly alleged that J.G.'s claims
do not fall within the grant of coverage for "bodily injury."

Even if sex trafficking without physical injury is considered "bodily injury,"

the policy contains an endorsement entitled "Exclusion – Abuse or Molestation" for claims "arising out of any act of 'abuse or molestation' committed by any person, including any act or omission in connection with the prevention or suppression of such 'abuse or molestation'." (Doc. 1-2, p. 53). "Abuse or molestation" is defined for the purpose of this endorsement as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (Doc. 1-2, p. 53). "When the phrase 'arising out of' is found in an exclusionary clause of an insurance policy, we apply the 'but for' test traditionally used to determine cause-in-fact for tort liability." *Hays v. Georgia Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 114, 722 S.E.2d 923, 927 (2012).

Quite plainly, any "bodily injury" claimed by J.G. that resulted from being forced to have sex against her will would not have occurred "but for" "physical contact of a sexual nature" so as to fall squarely within the exclusion. Accordingly, Northfield has plausibly alleged that Coverage A does not apply to J.G.'s claim. Despite this, Northbrook contends that the exclusion does not apply because "abuse or molestation" is not the 'but for' cause of Northbrook's alleged TVPRA and negligence liability. (Doc. 7-1, pp.12-13). In so contending Northbrook ignores that policy interpretation "a two-step inquiry: first, a determination of coverage according to the general insurance agreement and, second, a decision regarding

10

whether an exclusion applies to negate coverage." *Nuvell Nat. Auto Fin., LLC v.*
*Monroe Guar. Ins. Co.*, 319 Ga. App. 400, 405, 736 S.E.2d 463, 468 (2012) (quoting
*Auto-Owners Ins. Co. v. Harrington*, 455 Mich. 377, 382, 565 N.W.2d 839 (1997)).
The question is not whether all of J.G.'s claims are based on "abuse or molestation"
but instead whether any claims based on "bodily injury" would be excluded under
the policy. Stated otherwise, Coverage A grants coverage for "bodily injury," not for
TVPRA and negligence generally.

In that regard, Georgia law looks at the factual allegations in the Underlying
Lawsuit and not the elements of the claim to determine coverage:

> Notwithstanding tort liability theories, the underlying facts and
> circumstances of the claims asserted determine whether or not a policy
> exclusion applies, because "the exclusionary clause is focused solely
> upon the genesis of the underlying plaintiff's claims—if those claims
> arose out of the excluded acts ... then coverage need not be provided.
> Claims arise out of the excluded conduct when 'but for' that conduct,
> there could be no claim against the insured."

*Hays v. Georgia Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 114, 722
S.E.2d 923, 927 (2012) (quoting *Video Warehouse v. Southern Trust Ins. Co.*, 297
Ga. App. 788, 791, 678 S.E.2d 484, 488 (2009)). Northfield has thus plausibly
alleged that any "bodily injury" alleged by J.G. comes within the "abuse or
molestation" exclusion for Coverage A not to apply.

### 3. Coverage B Plausibly Does Not Apply

Coverage B applies to "personal and advertising injury" that is "caused by an

'offense' arising out of [Northbrook's business." (Doc. 1-2, p. 37.) By an endorsement entitled **COMBINATION ENDORSEMENT – PERSONAL AND ADVERTISING INJURY LIABILITY**, "personal and advertising injury" is defined as "injury caused by one or more of the following offenses *committed by or on behalf of the insured*." (Doc. 1-3, p. 2) (emphasis added). Northbrook then seizes upon the offense of "false imprisonment" to contend that J.G.'s claim is covered (Doc. 7, p. 10), while conspicuously omitting the ***key part*** of the prefatory language that requires the "offense" to have been "*committed by or on behalf of the insured*…" (Doc. 1-3, p. 2) (emphasis added). This omission is highly material because there is no allegation that J.G. was detained "by or on behalf of" Northbrook. Instead, the allegations are that Northbrook did not prevent J.G. from being trafficked by others, not by or for Northbrook.

Courts considering this language have arrived at the same result. In *Nationwide Property & Casualty Insurance Company v. Sewell Vault & Monument, Inc.*, No. 3:11-CV-92-TCB, 2012 WL 13028694 (N.D. Ga. Feb. 13, 2012), for example, a contractor who was sued for disturbing a grave sought coverage under a "personal and advertising" offense "committed by or on behalf of [the] owner, landlord or lessor." Because the contractor was not "the owner, landlord, or lessor of the cemetery, coverage does not apply." *Id*. at *4. The same logic applies here: whether or not Northbrook could be liable for J.G.'s injury, the "false imprisonment"

was not committed "by or no behalf of" Northbrook so as to come with in the offense. Similarly, in *Citizens Insurance Company of America. v. Banyan Tree Management, LLC*, 631 F. Supp. 3d 1256 (N.D. Ga. 2022), a hotel guest sued for being filmed in the shower by an employee of the hotel who posted the footage on the internet. As in *Sewell Vault*, the court found the claimed injury was not committed "by or on behalf of" the hotel because filming was not done by the hotel nor did the hotel direct the employee to film the guest. *Id*. at 1278. Likewise, J.G. does not allege that she was falsely imprisoned "by or on behalf of" Northbrook, but instead that Northbrook did not prevent her from being trafficked. Northfield has thus plausibly alleged that the "false imprisonment" offense does not apply.

### 4. Assault or Battery Coverage Plausibly Does Not Apply

Northbrook expends considerable effort arguing that J.G.'s claims do not fall within the exclusion in the Assault or Battery Endorsement for claims "arising out of any act of 'assault' or 'battery' committed by any person, including any act or omission in connection with the prevention or suppression of such 'assault' or 'battery'" ("Assault or Battery Exclusion"). (Doc. 1-3, p. 5.) To that end, they rely extensively on the unpublished opinions of *Houston Specialty Ins. Co. v. Five Paces Inn Co.*, 823 F. App'x 897 (11th Cir. 2020) and *Mesa Underwriters Specialty Ins. Co. v. Khamlai Lodging, LLC*, No. 1:21-CV-2474-TWT, 2022 WL 1135013 (N.D. Ga. Apr. 18, 2022). In *Five Paces Inn*, the claim was that the injury was caused by

13

being served an "unwholesome" drink, which the Eleventh Circuit found was neither an assault nor a battery so as to be excluded from coverage. In *Mesa Underwriters*, the trial court found the insurer was not entitled to judgment on the pleadings because some of the sex trafficking claims did not fall within an exclusion for assault or battery as those terms were defined by the policy.

Once again, Northbrook puts the exclusions in front of the grant of coverage, which neither *Five Paces Inn* nor *Mesa Underwriters* addressed. In contrast, after excluding coverage for assault and batteries under Coverages A and B, Northfield's Policy separately grants "assault or battery" coverage up to a specified sub-limit for "'bodily injury', 'property damage' or 'personal and advertising injury' caused by an 'assault or battery offense' arising out of your business but only if the 'assault or battery offense' was committed in the 'coverage territory' during the policy period." (Doc. 1-3, p. 6.) The terms "bodily injury" and "personal and advertising injury" are defined in the same manner as discussed above with respect to Coverages A and B.

As discussed above, the only physical contact alleged by J.G. is being trafficked for sex which plausibly is not "bodily injury." Alternatively, the Assault and Battery endorsement excludes coverage for claims arising from "abuse or molestation," defined within the endorsement as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury

14

inflicted is intended or expected." (Doc. 1-3, p. 8.) To the extent J.G.'s allegations constitute "bodily injury," therefore, they would fall within this "abuse or molestation" exclusion.

With respect to Coverage B, "personal and advertising injury" is defined as specified offenses that were committed "by or on behalf of" Northbrook as stated above. Although "false imprisonment" is one of the enumerated offenses, J.G. was not detained "by or on behalf of" Northbrook for the claim to come within the Assault and Battery endorsement. Northfield has thus plausibly alleged that the assault and battery coverage does not apply such that Northbrook's motion should be denied.

## **CONCLUSION**

For the reasons provided, Northbrook's motion should be denied so that the Court can reach the merits of Northfield's declaratory judgment action.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
Rachael Slimmon
Georgia Bar No. 831661
rslimmon@fmglaw.com
*Attorneys for Plaintiff*

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)

15

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Local Rule 7.1D, I hereby certify that the foregoing has been

prepared with one of the font and point selections approved by the Court in N.D.

Ga. L.R. 5.1(C).

This 20th day of October, 2023.

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

*Attorney for Plaintiff*
*Northfield Insurance Company*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(833) 330-3699 (telephone)
(770) 937-9960 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

D. Austin Bersinger
Christopher J. Daniels
Alexis K. Daenecke
BARNES & THORNBURG LLP
3340 Peachtree Road, N.E., Suite 2900
Atlanta, Georgia 30326-1092
*Counsel for Northbrook Industries, Inc. dba Northbrook and Suites*

Richard W. Hendrix
David H. Bouchard
FINCH McCRANIE, LLP
229 Peachtree Street NE
Suite 2500
Atlanta, Georgia 30303
*Counsel for J.G.*

This 20th day of October, 2023.

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
*Attorney for Plaintiff*
*Northfield Insurance Company*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(833) 330-3699 (telephone)
(770) 937-9960 (facsimile)