UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NORTHFIELD          INSURANCE
COMPANY,

           Plaintiff,

    v.

NORTHBROOK         INDUSTRIES,
INC. D/B/A UNITED INN AND
SUITES, and J.G.,

          Defendants.

CIVIL ACTION NO.

1:23-CV-03596-SEG

## **O R D E R**

This case is before the Court on Defendant Northbrook Industries, Inc.'s

motion to dismiss (Doc. 7).  Having carefully considered the parties' positions

and applicable law, the Court enters the following order.

## I.    **Introduction**

In recent years, federal courts have seen a significant increase in the

number of civil claims brought pursuant to the Trafficking Victims Protection

Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, by individuals who have

been trafficked for sex at hotels.[1]  To date, few courts have had occasion to

---

[1] According to the Human Trafficking Legal Center, 249 civil sex trafficking
lawsuits were filed pursuant to the TVPRA in 2022 – triple the number of such
cases in the preceding year. Human Trafficking Legal Center, *Federal Human
Trafficking Civil Litigation: Using Civil Litigation to Combat Human
Trafficking*,   at   7   (2022   Data   Update),   https://htlegalcenter.org/wp-

consider the thorny insurance questions that may attend TVPRA litigation. Such questions are before the Court in this case.

This declaratory judgment insurance action stems from a lawsuit ("the Underlying Action") brought by J.G. against Northbrook Industries, Inc. d/b/a United Inn and Suites ("Northbrook"), the operator of a hotel at which J.G. was allegedly trafficked for sex as a minor.[2]  With the instant lawsuit, Northbrook's insurer, Plaintiff Northfield Insurance Company, seeks a determination as to its obligations to defend and indemnify Northbrook in connection with the Underlying Action.   Defendants Northbrook and J.G. seek dismissal of Northfield's declaratory judgment action, arguing that J.G.'s claims are covered by Northbrook's insurance policy.  The Court finds that Northfield has a duty to defend Northbrook in the Underlying Action, but that a determination as to Northfield's duty to indemnify is not ripe until final judgment is entered in the Underlying Action.

---

content/uploads/HT-Legal-2022-Data-Update-Civil-Litigation-Report_FINAL-FOR-PUBLICATION-12_2023.pdf.  "The significant increase in sex trafficking cases filed in 2022 reflects a surge of sex trafficking cases filed against hotels (73)[,]" including 21 cases in Georgia.  *Id.*

[2] J.G. is proceeding anonymously in the Underlying Action.

## II.    Background

### A. The Underlying Action

In the Underlying Action, J.G. alleges that she was trafficked for sex as a minor at the United Inn, a hotel owned and operated by Northbrook. (Compl., Doc. 1 ¶ 10; Underlying Action Compl., Doc. 1-1 ¶¶ 8, 9); *see J.G. v. Northbrook Industries, Inc., d/b/a United Inn and Suites*, 1:20-cv-5233-SEG (N.D. Ga.).[3]   J.G. alleges that Northbrook "knew or should have known" that she was trafficked for sex at the United Inn and that Northbrook "participated in, facilitated, condoned, or ignored the sex trafficking of [J.G.]." (Underlying Action Compl., Doc. 1-1 ¶ 11.)   J.G. also alleges that Northbrook knowingly benefitted from participating in a sex trafficking venture with J.G.'s alleged traffickers.   (*Id.*)   J.G. asserts claims for violation of the TVPRA, 18 U.S.C. § 1595,[4] and for negligence.   (*Id.* ¶¶ 73–111.)   The Underlying Action remains pending.

---

[3] Northfield has attached a copy of the Underlying Action complaint to its complaint in this action.  (Doc. 1-1.)

[4] The TVPRA prohibits certain kinds of human trafficking, including sex trafficking.  *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021).  Under Section 1595 of the TVPRA, any "victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or

### B. The Policy

Insurer Northfield issued to Insured Northbrook a commercial insurance policy, No. WS348486, with a policy period of July 13, 2018, to July 13, 2019 (the "Policy").[5]  (Compl., Doc. 1 ¶ 15; Doc. 1-2 (Part 1 of the Policy); Doc. 1-3 (Part 2 of the Policy).)  As relevant here, the Policy sets forth the scope of coverage and contains certain endorsements that modify coverage.

#### 1.  Scope of Coverage

There are two coverage provisions relevant to this action: "Coverage A" and "Coverage B."

#### i.  Coverage A – "Bodily Injury"

Coverage A provides coverage for "bodily injury."  Specifically, Coverage A states that Northfield "will pay those sums that the insured becomes legally obligated to pay as damages because of '*bodily injury*' or 'property damage' to which this insurance applies.  We [Northfield] will have the right and duty to defend the insured against any 'suit' seeking those damages."  (Doc. 1-2 at 33

---

should have known has engaged in an act in violation of this chapter)[.]"  18 U.S.C. § 1595(a).

[5] The parties do not dispute that all relevant events occurred during the policy period.

(emphasis added).)[6]  "Bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at 44.)

### ii.  Coverage B – "Personal and Advertising Injury"

Coverage B provides coverage for "personal and advertising injury."  The provision states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of '*personal and advertising injury*' to which this insurance applies. We will have the right and duty to defend the insured against any seeking those damages."  (*Id.* at 37 (emphasis added).) "Personal and advertising injury" is defined, in relevant part, as "injury caused by one or more of the following offenses committed by or on behalf of the insured: . . . False arrest, detention or imprisonment, provided that the claim is made or the 'suit' is brought by a person who claims to have been falsely arrested, detained or imprisoned[.]"[7]  (Doc. 1-3 at 2.)

---

[6] The cited page numbers refer to those generated by CM/ECF.

[7] Two notes about the Policy's definition of "personal and advertising injury." First, a different definition appears earlier in the Policy, (*see* Doc. 1-2 at 46), but the parties do not dispute that the definition above, set forth in an endorsement, is the operative definition here.  Second, the definition for "personal and advertising injury" also extends to other "offenses" such as malicious prosecution, wrongful eviction, slander, and copyright infringement. (Doc. 1-3 at 2.)  But the parties do not contend that these other offenses are relevant to this action.

## 2. Relevant Endorsements

The Policy contains certain endorsements that modify the scope of coverage.  Two such endorsements are relevant to this action.

### i.  "Abuse or Molestation" Endorsement

The "Abuse or Molestation" Endorsement modifies Coverage A and Coverage B by excluding from coverage injuries "arising out of any act of 'abuse or molestation' committed by any person, including any act or omission in connection with the prevention or suppression of such 'abuse or molestation'." (Doc. 1-2 at 53.)  "Abuse or molestation" means "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected."  (*Id.*)

### ii. "Assault or Battery" Endorsement

The "Limited Assault or Battery Liability Coverage" endorsement ("Assault or Battery Endorsement") modifies the coverage provided in Coverage A and Coverage B as it relates to "assault" and "battery."  (Doc. 1-3 at 5–8.)   Relevant here, the Assault or Battery Endorsement limits the coverage available for "assault or battery offense[s]" to $25,000 for "Each Assault or Battery Offense" and to $50,000 for "Assault or Battery Aggregate." (*Id.* at 5–6.)  An "assault or battery offense" is "a single act of 'assault' or

'battery', or multiple, continuous, sporadic or related acts of 'assault' or 'battery', committed by any person or by two or more persons acting together."[8] (*Id.* at 8.)

The Assault or Battery Endorsement contains two, other provisions relevant to this dispute.  First, the endorsement excludes from coverage injuries "arising out of an 'assault or battery offense' committed at the direction of the insured *or that the insured knowingly allowed to happen*."  (*Id.* at 6 (emphasis added).)  Second, the Assault or Battery Endorsement excludes from coverage injuries "arising out of 'abuse or molestation[.]'"  (*Id.* at 6.)  "Abuse or molestation" is defined here in the same way as it is defined above in the Abuse or Molestation Endorsement.  (*Id.* at 8.)

The foregoing provisions operate together in the following way.  If Northbrook becomes legally obligated to pay damages because of a "bodily injury" (Coverage A) or a "personal and advertising injury" (Coverage B), then Northfield must generally provide full coverage.  But if the claimed "bodily

---

[8] "Assault," in turn, is defined as "any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury."  (Doc. 1-3 at 8.)  "Battery" means "any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected."  (*Id.*)

injury" or "personal and advertising injury" arises from an "assault or battery offense," then the $25,000/$50,000 limitation on coverage applies under the Assault or Battery Endorsement.  Coverage, however, will be excluded entirely if (relevant here) the injury arises out of (a) "abuse or molestation" or (b) an assault or battery offense that Northbrook "knowingly allowed to happen."

### iii.    This Declaratory Judgment Action

On August 14, 2023, Insurer Northfield filed this declaratory judgment action against Northbrook and J.G. pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201,[9] seeking "a declaration that it does not owe coverage to Northbrook for the claims asserted by J.G. in the Underlying Lawsuit." (Compl., Doc. 1 ¶ 42.)  Northbrook filed a motion to dismiss.  (Doc. 7.)  J.G. filed motions to adopt Northbrook's motion to dismiss brief and reply brief, which the Court granted.  (Doc. 9, 22.)

### III.    Legal Standard

Defendants have filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which authorizes dismissal for "failure to state a

---

[9] The Declaratory Judgment Act provides in relevant part that in "a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This requires more than mere "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555. The plaintiff must allege facts that "raise the right to relief above the speculative level." *Id.*

Accordingly, evaluation of a motion to dismiss entails a two-pronged approach: (1) a court must identify any allegations in the pleading that are merely legal conclusions to which the "assumption of truth" should not apply, and (2) where there are remaining well-pleaded factual allegations, a court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## IV.  Discussion

Northfield asserts three claims for declaratory relief.  The insurer seeks declarations that: (1) J.G. does not allege a "personal and advertising injury"

under Coverage B; (2) the Abuse or Molestation Endorsement excludes coverage under Coverage A and Coverage B; and (3) the exclusions in the Assault or Battery Endorsement apply to J.G.'s claims. Northfield seeks declaratory relief as to both its duty to defend and duty to indemnify Northbrook in connection with the Underlying Action.

Northbrook seeks dismissal of Northfield's claims, arguing that (1) Northfield fails to state a claim for declaratory relief as to its duty to defend, and (2) Northfield's request for declaratory relief as to its duty to indemnify is not ripe for adjudication.

### A. Relevant Principles of Georgia Insurance Law

"[T]he duty to defend and the duty to indemnify are discrete obligations." *S. Tr. Ins. Co. v. Mountain Express Oil Co.*, 828 S.E.2d 455, 458 (Ga. Ct. App. 2019). "The duty to defend arises where the claims as alleged in the complaint potentially fall within the policy coverage," *id.*, whereas the duty to indemnify arises when, or if, liability is ultimately imposed on the insured, *Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007). An insurer's duty to defend is therefore "broader than its duty to indemnify." *Shafe*, 653 S.E.2d at 873.

Under Georgia law, "'[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against

the insured.'" *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 841 (11th Cir. 2014) (quoting *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998)).  In evaluating whether an insurer has a duty to defend, courts look to the allegations in the underlying complaint "to determine whether a liability covered by the policy *is asserted.*"  *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012) (quoting *Bituminous Cas. Corp. v. N. Ins. Co. of New York,* 548 S.E.2d 495, 497 (Ga. Ct. App. 2001) (emphasis in original); *see also Houston Specialty Ins. Co. v. Five Paces Inn Co.*, No. 1:19-CV-03319-CAP, 2019 WL 9633224, at *5 (N.D. Ga. Dec. 19, 2019), *aff'd*, 823 F. App'x 897 (11th Cir. 2020) ("When faced with a motion to dismiss for failure to state a claim in a declaratory action, and [when] the insurer's duty to defend is at issue, the district court must determine whether the allegations in the underlying complaint trigger a duty to defend.").  Thus, "the issue is not whether the insured is *actually liable* to the plaintiffs in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend."  *HDI-Gerling Am. Ins.*, 701 F.3d at 666 (quoting *Bituminous Cas. Corp.*, 548 S.E.2d at 497).

In the duty to defend analysis, the terms of the insurance policy are "liberally construed in favor of coverage."  *Barrett v. Nat'l Union Fire Ins. Co.*

*of Pittsburgh*, 696 S.E.2d 326, 331–32 (Ga. Ct. App. 2010).  "If the facts as alleged in the complaint *even arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action."  *Scott v. Gov't Emples. Ins. Co.*, 700 S.E.2d 198, 201 (Ga. Ct. App. 2010) (citation omitted) (emphasis added).  "Where the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured."  *Landmark Am. Ins. Co. v. Khan*, 705 S.E.2d 707, 710 (Ga. Ct. App. 2011).

Policy exclusions, moreover, "must be strictly construed."  *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1332 (11th Cir. 2017) (applying Georgia law).  A policy exclusion will not relieve an insurer of its duty to defend unless the provision "unambiguously exclude[s] coverage."  *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 646 S.E.2d 682, 685 (Ga. Ct. App. 2007).  Ambiguities in the terms of the insurance contract must be resolved in favor of the insured.  *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1214 (11th Cir. 1999) (applying Georgia law).

### B. Duty to Defend

The Court's determination as to the duty to defend is guided by "a two-step inquiry: first, a determination of coverage according to the general insurance agreement and, second, a decision regarding whether an exclusion

applies to negate coverage." *Nuvell Nat. Auto Fin., LLC v. Monroe Guar. Ins. Co.*, 736 S.E.2d 463, 468 (Ga. Ct. App. 2012).

### 1. Coverage

The Policy provides two sources of coverage that are relevant to this action: Coverage A (Bodily Injury Liability) and Coverage B (Personal and Advertising Injury Liability). The Court finds that J.G.'s claims are covered under both provisions.

### i.  Coverage A – Bodily Injury Liability

Coverage A of the Policy provides coverage for "those sums that [Northbrook] becomes legally obligated to pay as damages because of 'bodily injury[.]'" (Doc. 1-2 at 33.) As stated above, "[b]odily injury" is defined in the Policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 1-2 at 44.)

Northfield's motion-to-dismiss response brief seeks a determination that Northfield owes no duty to defend under Coverage A because "J.G.'s claims do not fall within the grant of coverage for 'bodily injury.'" (Doc. 13 at 9.) Northfield's declaratory-judgment complaint, however, contains no request for such a determination. The complaint does not allege that J.G.'s claims fall outside the scope of Coverage A, and it seeks no declaration as to the same. Northfield's request for a determination as to the absence of coverage under

Coverage A is thus not properly before the Court.  *See Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (holding that a plaintiff's theory of liability was "not properly raised" when it was asserted "for the first time in his response to [defendant's] motion to dismiss, instead of [in] an amended complaint"); *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1381 (S.D. Ga. 2015) ("A complaint may not be amended by briefs in opposition to a motion to dismiss.").

Northfield's arguments in opposing coverage under Coverage A also fail on the merits.  Northfield argues that J.G.'s claims are not covered under Coverage A because "[a]lthough J.G. alleges that she [was] trafficked for sex[,] she does not claim to have been *physically* injured as required for there to be 'bodily injury' under the policy."  (Doc. 13 at 9 (emphasis in original).)  This is incorrect.  In the Underlying Complaint, J.G. explicitly alleges that she "suffered substantial physical . . . harm[,]" including, among other harms, "physical deterioration" and "injuries[.]"  (Doc. 1-1 ¶¶ 23, 52.)  In arguing that J.G. was not "physically injured," Northfield takes too narrow of a view of what constitutes "bodily injury."  *See, e.g., Doe v. Camp Dream Found., Inc.*, No. 1:16-CV-1323-RWS, 2017 U.S. Dist. LEXIS 150477, at *19 (N.D. Ga. July 21, 2017) (noting that while "'bodily injury' must involve 'physical harm,'" relevant Georgia caselaw "do[es] *not* hold that physical discomfort cannot count as

14

physical harm"); *see also* Doc. 1-2 at 44 (the Policy defining "bodily injury" as including "sickness" and "injury"). Construed liberally in favor of coverage, the Court finds that J.G.'s underlying complaint alleges bodily injuries that fall within the scope of Coverage A.

### ii. Coverage B – Personal and Advertising Injury Liability

Coverage B provides insurance coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (Doc. 1-2 at 37.) Relevant here, a "personal and advertising" injury is an "injury caused by one or more of the following offenses committed by or *on behalf of the insured*: . . . False . . . imprisonment[.]" (Doc. 1-3 at 2 (emphasis added).) It is undisputed that J.G. alleges injuries that were caused by false imprisonment at the United Inn;[10]

---

[10] Although J.G. does not assert a false imprisonment claim in the Underlying Action, "Georgia courts look to the underlying cause of the injury to determine coverage, and not just to the specific theory of liability alleged." *Auto-Owners Ins. Co. v. Riley*, No. 1:20-cv-4917-AT, 2022 U.S. Dist. LEXIS 51649, at *11-12 (N.D. Ga. Feb. 9, 2022) (citation omitted). J.G. alleges that she was kept by her traffickers at the United Inn "for extended periods" over the course of two years. (Doc. 1-1 ¶¶ 17, 28.) Northfield does not dispute that the circumstances alleged in the underlying complaint suggest that J.G. was falsely imprisoned. *See, e.g., Starr Indem. & Liab. Co. v. Choice Hotels Int'l, Inc.*, No. 20-cv-3172 (PKC), 2021 U.S. Dist. LEXIS 112980, at *25-26 (S.D.N.Y. June 16, 2021) (finding that a hotel sex trafficking victim's injuries included "false imprisonment," even though the victim did not assert a false imprisonment claim in the underlying action); *see also Ricchio v. Bijal, Inc.*,

but the parties disagree as to whether J.G.'s alleged false imprisonment was "committed by or on behalf of" Northbrook.

Insured Northbrook argues that J.G.'s allegations concerning its participation in and benefit from her sex trafficking arguably bring her claims within the scope of Coverage B.    Specifically, J.G.'s complaint in the Underlying Action contains the following allegations:

- "Northbrook chose to profit from the sex trafficking ventures in which it participated, including the trafficking of Plaintiff, rather than to take reasonable and known steps to prevent, identify, and deter sex trafficking at the United Inn. In doing so, the Defendant participated in, facilitated, condoned, or ignored the sex trafficking of Plaintiff."  (Underlying Action Compl., Doc. 1-1 ¶ 11.)

- "Northbrook participated in a sex trafficking venture by providing to Plaintiffs traffickers the necessary venue for Plaintiffs minor sex trafficking. In the course of this venture, multiple men paid to have sex with Plaintiff J. G. at the United Inn. For a fee, Northbrook provided the crime scene, a room at the United Inn, where Plaintiff was sold for sex."  (*Id.* ¶ 76.)

- "Northbrook knowingly benefitted from Plaintiff's sex trafficking by receiving a percentage of the revenue generated by the operation of the United Inn, including a percentage of the revenue generated from the rate charged and paid for the rooms in which Plaintiff was trafficked."  (*Id.* ¶ 75.)

---

424 F. Supp. 3d 182, 192 (D. Mass. 2019) ("The relevant question is whether Ricchio's injuries—which she alleges were caused by violations of the TVPA— constitute a personal injury. Because the definition of personal injury under the policy includes injuries arising out of false imprisonment, and because Ricchio's injuries at least in part arose out of her false imprisonment, the answer to that question is yes.").

- "On information and belief, Northbrook's employees, agents, and/or representatives allowed, condoned, assisted, and facilitated Plaintiff's minor sex trafficking at the United Inn by, among other things, acting as lookouts for Plaintiff's traffickers and informing the traffickers of police activity at the hotel as well as warning Plaintiff's traffickers about guest complaints and high visitor traffic drawing unwanted attention." (*Id.* ¶ 39.)

Allegations like these, says Northbrook, indicate that J.G.'s alleged false imprisonment was committed "on behalf of" Northbrook.  Insurer Northfield, on the other hand, argues that J.G. alleges only that "Northbrook did not prevent her from being trafficked," not that she was trafficked "on behalf of" Northbrook.  (Doc. 13 at 13.)

No definition of the phrase "on behalf of" can be found in the Policy, so the Court must look to the phrase's "usual and common meaning," which "may be supplied by common dictionaries." *Auto-Owners Ins. Co. v. Parks*, 629 S.E.2d 118, 121 (Ga. Ct. App. 2006).  The phrase "on behalf of" is commonly defined to mean "in the interest of" or "as a representative of."  Behalf, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/on%20behalf%20of (last visited September 16, 2024); *see also* Behalf, Oxford-English Dictionary, https://www.oed.com/dictionary/behalf_n?tab=meaning_and_use#1379478360 (last visited September 16, 2024) (defining "on behalf of" as "[i]n the name of a person, organization, etc."; "as the agent or representative of"; or "for."); Behalf,

The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=on+behalf+of (last visited September 16, 2024) (defining "on/in behalf of" as "[a]s the agent of; on the part of" or "[f]or the benefit of; in the interest of"); BEHALF, Black's Law Dictionary (11th ed. 2019) ("*on behalf of* means 'in the name of, on the part of, as the agent or representative of.'").  These definitions suggest that the phrase "on behalf of" may describe (a) an agency/representative relationship *or* (b) a circumstance in which one acts in the interest of another.  *See Occidental Fire & Cas. Co. of N. Carolina v. Soczynski*, No. CIV. 11-2412 JRT/JSM, 2013 WL 101877, at *12 (D. Minn. Jan. 8, 2013), *aff'd sub nom. Occidental Fire & Cas. Co. v. Soczynski*, 765 F.3d 931 (8th Cir. 2014) ("[N]umerous courts from other jurisdictions have concluded that 'on behalf of,' when used in various contexts, is not strictly limited to the concept of agency, but unambiguously means in the interest of, as a representative of, or for the benefit of.") (collecting cases).

In this case, there are no allegations that J.G.'s traffickers acted as Northbrook's agents or representatives; but there certainly are allegations that the traffickers acted in Northbrook's interest and for Northbrook's benefit.  As set forth in the allegations stated above, J.G. alleges that Northbrook financially benefitted from J.G.'s sex trafficking and even assisted the

18

traffickers in operating the trafficking enterprise on its premises.[11]  (*See* Doc. 1-1 ¶¶ 11, 39, 75, 76.)  Construing the Policy liberally in favor of coverage, it is at least arguable from the Underlying Action complaint that J.G. was falsely imprisoned "on behalf of" Northbrook.  *See Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) (Under Georgia law, "an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage.").  The Court thus finds that J.G. asserts a "personal" injury under Coverage B.

## 2. Exclusions and Limitations to Coverage

We next consider whether J.G.'s claims are subject to any exclusion or limitation to coverage.  The relevant exclusions and limitations are set forth in

---

[11] The alleged benefit to Northbrook distinguishes this case from *Nationwide Property & Casualty Insurance Company v. Sewell Vault & Monument, Inc.*, No. 3:11-CV-92-TCB, 2012 WL 13028694 (N.D. Ga. Feb. 13, 2012) – a case on which Northfield relies in opposing coverage.  That case involved a coverage dispute between an insurer and a contractor who was sued for negligently desecrating a gravesite at a cemetery.  The policy covered "Personal and Advertising Injur[ies]" that were committed "by or on behalf of the . . . owner" of the premises on which the injury occurred.  *Id.* at *4.  The court found that the negligence claims were not covered by this provision because the contractor was not alleged to have desecrated the gravesite "on behalf of" the cemetery owner.  *Id.*  Unlike in *Nationwide*, the "personal and advertising injury" in this case was allegedly committed, at least in part, for Northbrook's benefit and interest.

(1) the Abuse or Molestation Endorsement and (2) the Assault or Battery Endorsement.

### i.    The Abuse or Molestation Endorsement

The Abuse or Molestation Endorsement excludes coverage for any "[b]odily injury" or "[p]ersonal and advertising injury" "arising out of any act of 'abuse or molestation' committed by any person[.]" (Doc. 1-2 at 53.) "Abuse or molestation" means "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (*Id.*) The disputed issue here is whether Insurer Northfield has shown that J.G.'s injuries all "aris[e] out of" alleged acts of abuse or molestation.

An exclusion clause in an insurance policy is "focused solely upon the genesis of the underlying plaintiff's claims—if those claims arose out of the excluded acts[,] then coverage need not be provided." *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 722 S.E.2d 923, 927 (Ga. Ct. App. 2012). "[W]hen the phrase 'arising out of' is found in an exclusionary clause of an insurance policy, Georgia courts interpret that phrase narrowly, 'applying the 'but for' test traditionally used to determine cause-in-fact for tort claims.'" *Houston Specialty Ins. Co. v. Five Paces Inn Co.*, 823 F. App'x 897, 899 (11th Cir. 2020)

(quoting *Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 696 S.E.2d 326, 332 (Ga. Ct. App. 2010)).  That is, "[c]laims arise out of excluded conduct when 'but for' that conduct, there could be no claim against the insured."  *Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 788 S.E.2d 74, 77 (Ga. Ct. App. 2016).  Conversely, "[a] claim does not 'arise out of' a circumstance if, independent of that circumstance, the claim could still exist." *Langdale Co. v. Nat'l Union Fire Ins. Co.*, 609 F. App'x 578, 588 (11th Cir. 2015) (citation omitted) (applying Georgia law).  Thus, the pertinent question is not simply whether J.G. alleges that abuse or molestation occurred; rather, the question is whether, in the absence of abuse or molestation, there would be no claim against Northbrook at all.  *Hays*, 722 S.E.2d at 927.

J.G.'s claims and injuries did not arise exclusively out of abuse or molestation.  As explained below, J.G. alleges bodily and personal injuries suffered independent of any act of alleged abuse or molestation.[12]

---

[12] The Court notes that there is no inherent inconsistency between (1) J.G.'s assertion of a TVPRA claim in the Underlying Action and (2) Northbrook's contention here that abuse or molestation is not a but-for cause of all of its underlying liability.  J.G. alleges that Northbrook violated the TVPRA by participating in a venture that violated Section 1591 of the TVPRA.  *See* 18 U.S.C. §§ 1591, 1595(a).  "[T]o to be criminally liable under § 1591 . . . a defendant need only put the victim in a position where a sex act *could* occur, regardless of whether a sex act eventually *did* occur."  *United States v. Blake*, 868 F.3d 960, 977 (11th Cir. 2017) (emphasis in original); *see also United States v. Mozie*, 752 F.3d 1271, 1286 (11th Cir. 2014) ("It is enough that [the

### a. Coverage A – Bodily Injury

Northfield believes that any "bodily injury" that J.G. allegedly suffered stemmed solely from "being forced to have sex against her will" – a circumstance that Northfield says is "abuse or molestation" under the Policy. (Doc. 13 at 10.)  Thus, the insurer argues that "any 'bodily injury' alleged by J.G. comes within the 'abuse or molestation' exclusion[.]"  (Doc. 13 at 11.)

To be sure, J.G. alleges in the Underlying Action that she was caused to engage in commercial sex acts with adult men – acts that, in light of J.G.'s status as a minor, the parties do not dispute constituted "abuse or molestation."  But Northfield's position that J.G.'s bodily injuries arose *solely* from these sex acts "turns on just one possible interpretation of [J.G.'s] complaint – and not even the best interpretation." *Five Paces*, 823 F. App'x at 899.  J.G. alleges that Northbrook's conduct caused her multiple, "indivisible injuries," including "substantial physical . . . harm" and "physical deterioration[.]"  (Doc. 1-1 ¶¶ 23, 52, 83.)  It is at least arguable that some of these injuries arose not from any act of abuse or molestation in particular, but rather from other aspects of J.G.'s experience as an underage victim of

---

defendant] 'recruited' the victims in Counts 6 through 8 to engage in commercial sex acts even though they did not actually do so.").  Thus, although Northbrook faces a TVPRA claim in the Underlying Action, the success of that claim is not dependent on a finding of abuse or molestation.

trafficking.[13]  J.G.'s physical deterioration, for example, could plausibly have resulted from being forcibly kept in a hotel for extended periods without freedom of movement and under the thumb of dangerous individuals.  (*Id.* ¶¶ 20, 23, 31.)  More specifically, J.G. was allegedly confined by weapon-toting traffickers for weeks on end in hotel rooms that were used for a booming prostitution and drug-selling enterprise.  (*Id.* ¶¶ 21, 26, 31.)  On many days, numerous people went in and out of J.G.'s hotel room – not just to purchase sex with J.G., but also to purchase sex with other trafficking victims and to buy drugs.  (*Id.* ¶¶ 21–22.)  It is arguable based on the underlying pleading that J.G. suffered physical deterioration from these circumstances even in the absence of abuse or molestation.

J.G. also characterizes the United Inn as an environment that would be dangerous and unhealthy for anyone, let alone a school-aged victim of trafficking.  J.G. alleges that sex crimes were "rampant" at the United Inn, and she details several instances of sexual violence and prostitution that occurred at the hotel in the period leading up to and during her trafficking there.  (*Id.*

---

[13]  The Georgia Supreme Court has recognized that "bodily injury" can sometimes arise "from a series of actions over an extended period[.]" *Provident Life & Accident Ins. Co. v. Hallum*, 576 S.E.2d 849, 851 (Ga. 2003) (rejecting the argument that "bodily injury must have resulted from a discrete event" and holding that "[a] person could suffer a series of small traumas over an extended period that ultimately resulted in a bodily injury that was disabling.").

¶¶ 46−47, n.4.)   There were also alleged instances of homicide and other physical violence at the United Inn during the approximate period of J.G.'s trafficking.   (*Id.*)   The foregoing allegations indicate that, irrespective of the alleged sexual abuse, this was a setting that could have reasonably caused bodily harms – such as physical deterioration – to any person who was forcibly detained there for weeks at a time.

One could reasonably read the underlying complaint as alleging physical harms that J.G. incurred even independent of "abuse or molestation."   The Court thus concludes that the Abuse or Molestation Endorsement does not exclude coverage under Coverage A because J.G. alleges bodily injuries that do not arise from abuse or molestation.

### b. Coverage B – Personal injury

The Abuse or Molestation Endorsement does not preclude coverage under Coverage B for many of the same reasons that it does not preclude coverage under Coverage A.[14]   Again, Coverage B applies to liability for injuries caused by false imprisonment.   (Doc. 1-2 at 37.)   Northfield does not dispute that J.G.'s alleged experience at the United Inn constituted false

---

[14] Northfield's motion-to-dismiss response brief only argues that the Abuse or Molestation Endorsement applies to Coverage A.   It does not argue that the endorsement applies to Coverage B.

imprisonment.  And as discussed above, J.G. alleges multiple injuries arising from her experience at the United Inn that do not arise from abuse or molestation in particular.

Additionally, unlike Coverage A, Coverage B also provides coverage for non-physical, *emotional* harms.  *Nationwide Mut. Fire Ins. Co. v. Somers*, 591 S.E.2d 430, 435 (Ga. Ct. App. 2003) (holding that "claims for emotional distress" constitute "personal" injuries under Coverage B).  J.G. alleges that she suffered "substantial . . . emotional[ ] and psychological harm[,]" "mental and emotional pain and suffering," sleep deprivation, and "mental anguish and emotional distress" as a result of being trafficked at the United Inn.  (Doc. 1-1 ¶¶ 23, 52, 113.)  As with the alleged physical harms, J.G.'s underlying complaint can be reasonably read as alleging non-physical harms that she suffered independent of abuse or molestation.  As stated above, J.G. was allegedly kept for weeks at a time in a dangerous setting where prostitution, drugs, and weapons were ubiquitous.  Even during "periods when school was in session for children of [J.G.'s] age," J.G. was harbored at the United Inn without access to money and was allegedly seen soliciting men and walking around hotel common areas while wearing "little clothing[.]"  (*Id.* ¶¶ 23, 31.) J.G.'s experiences arguably gave rise to non-physical injuries – such as emotional distress and trauma – that J.G. incurred apart from any instance of

abuse or molestation.  The harms relating to J.G.'s false imprisonment thus "fall outside the Abuse or Molestation Exclusion[.]"[15]

In sum, this is not a case in which "all of the claims in the Underlying Lawsuit trace their origin directly back to . . . alleged [ ] abuse [or molestation] of [J.G.]"  *Liberty Corp. Capital, Ltd. v. First Metro. Baptist Church*, No. CV420-179, 2021 U.S. Dist. LEXIS 173411, at *16 (S.D. Ga. Sep. 13, 2021). The Abuse or Molestation Endorsement does not bar coverage under Coverage A or Coverage B.

### ii.   Assault or Battery Endorsement

The Assault or Battery Endorsement limits the amount of coverage for bodily injuries and personal and advertising injuries "caused by an 'assault or battery offense[.]'"  (Doc. 1-3 at 5–6.)[16]  This endorsement also excludes coverage for injuries "arising out of an 'assault or battery offense' committed

---

[15] *Choice Hotels*, 2021 U.S. Dist. LEXIS 112980, at *25 (finding in an insurance dispute arising from a TVPRA claim against a hotel that, "from the face of [the victim's] complaints and construing the duty to defend broadly in favor of Choice [the hotel] as the insured, the claimed circumstances of her false imprisonment [are] closely intertwined with her kidnapping and trafficking. . . . Because the allegations referencing false imprisonment fall outside the Abuse or Molestation Exclusion, Starr also has a duty to defend Choice.").

[16] Like exclusions, "limitations on coverage, such as sublimits," are to be construed narrowly against the insurer. *Five Paces*, 823 F. App'x at 899.

at the direction of the insured or that the insured knowingly allowed to happen." (*Id.* at 6.)[17]  "Assault" is defined as "any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury." (*Id.* at 8.)  "Battery" means "any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (*Id.*)

Insured Northbrook argues that the sublimits and exclusions in the Assault or Battery Endorsement do not apply because J.G. alleges covered injuries that were not caused by assault or battery.  Insurer Northfield does not respond to this argument.  Instead, Northfield re-asserts its prior arguments that there is no coverage in the first place because (1) J.G. does not allege a "bodily injury," (2) any bodily injury would fall within the Abuse or Molestation exclusion, and (3) J.G. does not allege a "personal" injury. (Doc. 13 at 13−15.)  In other words, Northfield argues that we need not reach the question of whether coverage is limited or excluded by the Assault or Battery Endorsement because, according to Northfield, there is no coverage to limit or

_____

[17] The Assault or Battery Endorsement also excludes coverage for injuries "arising out of 'abuse or molestation[,]'" (*id.* at 6), but as discussed above, J.G. allegedly suffered injuries that do not fall within the scope of an abuse or molestation exclusion.

exclude.    For reasons already discussed, the Court disagrees with each of Northfield's arguments.

Additionally, the Court agrees with Northbrook that J.G. alleges bodily and personal injuries that arguably fall outside the scope of the sublimits and exclusions found in the Assault or Battery Endorsement.    There are no instances of "assault or battery" unambiguously alleged in the underlying complaint, as those terms are defined in the Policy.  Although J.G. "alleges that [she] w[as] trafficked[,]" she does not allege that she "suffer[ed] either an intentional act to inflict injury or an intentional or reckless use of force." *Mesa Underwriters Specialty Ins. Co. v. Khamlai Lodging, LLC*, No. 1:21-CV-2474-TWT, 2022 U.S. Dist. LEXIS 70936, at \*14 (N.D. Ga. Apr. 18, 2022) (finding that sex trafficking victims' claims against a hotel did not fall within an "assault and battery exclusion").   And while J.G. alleges that she engaged in commercial sex with adult men as a minor, the underlying complaint does not allege that physical force was used or threatened against her. *See id.* at \*15. J.G. alleges that she was physically harmed as a result of Northbrook's acts and omissions, but she does not explicitly allege that she was subject to "assault or battery," as those terms are defined in the Policy.

Finally, even if J.G. had alleged that the commercial sex acts in which she engaged constituted assault or battery, her claims would not be excluded

from coverage.  As previously discussed, the physical and non-physical injuries that J.G. allegedly suffered as a result of her experience as an underage trafficking victim would arguably exist even in the absence of those alleged sex acts.  *Cf. Capitol Specialty Ins. Corp. v. PTAV, Inc.*, 331 F. Supp. 3d 1329, 1335 (N.D. Ga. 2018) (finding that an assault or battery exclusion barred coverage because "*all* of [the underlying plaintiff's] injuries [we]re clearly substantially related to [the plaintiff's] sexual assault and abduction") (emphasis added). For the foregoing reasons, the Court finds that the Assault or Battery Endorsement does not bar or limit coverage for J.G.'s claims.

### 3.  Summary of Findings as to the Duty to Defend

J.G. alleges bodily injuries that fall within the scope of Coverage A and personal injuries that fall within the scope of Coverage B.  Northfield has not shown that coverage for these injuries is unambiguously barred or limited by the Abuse or Molestation Endorsement or the Assault or Battery Endorsement. Because J.G.'s claims against Northbrook are covered and not excluded or limited by the Policy, Northfield has a duty to defend Northbrook in the Underlying Action.

### C. Duty to Indemnify

Northbrook argues that Northfield's request for declaratory relief as to its duty to indemnify is not ripe because no judgment has been entered against

Northbrook in the Underlying Action, which remains pending. Any determination as to Northfield's duty to indemnify, says Northbrook, would be purely advisory until the Underlying Action is resolved.

"The question of ripeness goes to whether the district court ha[s] subject matter jurisdiction."[18] *Tari v. Collier Cnty.*, 56 F.3d 1533, 1535 (11th Cir. 1995) (internal quotation marks omitted). "Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005).

The Court agrees with Northbrook that Northfield's claims are not ripe as they relate to its duty to indemnify. "Unlike with the duty to defend, the question of whether [Northfield] is required to indemnify [Northbrook] might never arise if [Northbrook] defeats [J.G.'s] claims in the first place." *Coca-Cola Sw. Beverages LLC v. Marten Transp., Ltd.*, No. 1:21-CV-4961-TWT, 2023 WL 5051353, at *5 (N.D. Ga. Aug. 7, 2023); *Citizens Ins. Co. of Am. v. Banyan Tree*

---

[18] Northbrook brings its motion to dismiss pursuant only to Rule 12(b)(6), but the Court notes that Rule 12(b)(1) allows for dismissal of a claim when the court "lack[s] subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The Court is also authorized to dismiss a claim *sua sponte* for lack of subject-matter jurisdiction. *See Barnett v. Bailey*, 956 F.2d 1036, 1039 (11th Cir. 1992) ("[A] court *sua sponte* can raise a jurisdictional defect at any time[.]"); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

*Mgmt., LLC*, 631 F. Supp. 3d 1256, 1268 n.5 (N.D. Ga. 2022), *aff'd*, No. 22-13581, 2023 WL 6319224 (11th Cir. Sept. 28, 2023) ("[I]t is possible that an insurer could have a duty to defend an insured but, at the conclusion of the underlying lawsuit, have no duty to indemnify. Accordingly, the Court will not consider the duty to indemnify as that issue is not yet ripe for adjudication."). Whether Northfield has a duty to indemnify Northbrook is therefore "not ripe for adjudication until the underlying lawsuit is resolved." *Mid -Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019); *Am. Fam. Ins. Co. v. Almassud*, 413 F. Supp. 3d 1292, 1300 (N.D. Ga. Sept. 3, 2019) ("Disputes related to an insurer's duty to indemnify are typically not ripe until liability is established in the underlying action." (citing *J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 927 (11th Cir. 2014)); *Zurich Am. Ins. Co. v. Robinson Mech. Contractors, Inc.*, No. 1:20-CV-2236-LMM, 2020 WL 6821322, at *4 (N.D. Ga. Aug. 26, 2020) ("The issue of whether [the insurer] has a duty to indemnify [the insured] from a judgment or settlement of [the underlying action plaintiff's] claims is not yet ripe."). The Court therefore finds that Northfield's claims are not ripe to the extent that they seek a declaration as to Northfield's duty to indemnify.

That said, the duty-to-indemnify inquiry may ripen in the near future, as the Underlying Action may soon proceed to trial and reach final resolution.

31

*See J.G. v. Northbrook Indus., Inc.*, 1:20-cv-5233-SEG (N.D. Ga.).[19]  The Court does not consider dismissal of the duty-to-indemnify claim to be in the interest of judicial economy.  Rather, the Court will exercise its discretion to stay consideration of Northfield's duty to indemnify until resolution of the Underlying Action.  *See, e.g., Owners Ins. Co. v. Hufstetler*, Civil Action No. 2:23-cv-20-RWS, 2023 U.S. Dist. LEXIS 171183, at *19 (N.D. Ga. Aug. 4, 2023) (staying consideration of insurer's duty to indemnify until resolution of the underlying action).

## V.    Conclusion

Northbrook's motion to dismiss (Doc. 7) is **GRANTED IN PART**. Northfield's claims are **DISMISSED** to the extent that they seek a declaration that Northfield owes no duty to defend in the Underlying Action.  The Court will not adjudicate Northfield's claims as they relate to its duty to indemnify until final judgment is entered in the Underlying Action.  This case is **STAYED** pending resolution of the Underlying Action.

---

[19] On August 16, 2024, this Court entered an order granting in part and denying in part Northbrook's motion for summary judgment in the Underlying Action.  1:20-cv-5233-SEG, Doc. 138 (N.D. Ga. Aug, 16, 2024).

**SO ORDERED** this 16th day of September, 2024.

SARAH E. GERAGHTY
United States District Judge